**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **SONYA LEES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION 04-0655-WS-C** |
| ) | |
| **SEA BREEZE HEALTH CARE** ) | |
| **CENTER, INC.,** *et al.,* ) | |
| ) | |
| **Defendants.** ) | |

**ORDER**

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Claims of Outrage and Intentional Infliction of Emotional Distress (doc. 38). The Motion has been briefed and is ripe for disposition.

**I.      Background.**

Plaintiff Sonya Lees brought this action against Sea Breeze Health Care Center, Inc., Paulette Adams and Janet Smith alleging that they had engaged in unlawful discrimination and retaliation against her because of her military status, in violation of the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. §§ 4300 *et seq*. ("USERRA"). In the operative Second Amended Complaint, Lees also advanced state-law claims against defendants for civil conspiracy (Count III), outrage (Count IV), tortious interference with business relations (Count V), and intentional infliction of emotional distress (Count VI).

The factual basis of all of these claims lies in events that allegedly transpired over a 10-month period in 2003 and 2004. Plaintiff alleges that she was employed by defendant Sea Breeze, that defendant Adams was her supervisor, and that defendant Smith was a manager at Sea Breeze at all material times. According to the Second Amended Complaint, defendants engaged in a pattern of harassment and retaliation against her after she notified them in June 2003 that she had enlisted in the United States Air Force Reserves, as a result of which she would need to miss work to attend basic

training.  Specifically, Lees maintains that upon presenting her orders, defendant Adams threw the papers in Lees' face, stated "what am I going to do for the next three months?" and indicated that Lees was "inconsiderate and selfish for joining the service."  (Second Amended Complaint, ¶ 8.)  Adams allegedly continued making similar comments to Lees until August 2003, when Lees left for basic training.  (*Id.*, ¶ 9.)  During plaintiff's absence for active military duty in late 2003, Adams allegedly made a series of remarks to others at Sea Breeze, indicating that Lees would not have a job when she returned from active duty, complaining that Lees was missing work as a result of her military service, and opining that Lees' actions reflected disregard for her job.  (*Id.*, ¶¶ 10-11.)  When Lees returned in late December 2003, Adams allegedly subjected her to an ongoing barrage of comments that Lees was "inconsiderate for joining the service" and "inconsiderate toward [her] job."  (*Id.*, ¶ 12.)

According to the Second Amended Complaint, defendant Smith began interviewing job applicants on Sea Breeze's behalf in March 2004, intimating that a position would become available soon because its present occupant, who had joined the military at age 34 without informing others of her plans, would be terminated.  (*Id.*, ¶ 13.)  Smith further allegedly informed applicants that Lees was "gung-ho military," that "Sea Breeze wasn't on her mind," that she didn't know why Lees decided to join the military at her age, and that Lees was selfish for doing so.  (*Id.*, ¶ 14.)  Plaintiff alleges that her employment at Sea Breeze was ultimately terminated in April 2004 because of her membership and service obligations in the military.  (*Id.*, ¶ 15.)

At the heart of the pending Motion to Dismiss are Counts IV (Outrage) and VI (Intentional Infliction of Emotional Distress) of the Second Amended Complaint.  Count IV alleges that defendants' conduct towards Lees was outrageous, beyond all possible bounds of decency, atrocious, and intolerable to a modern American society at war.  (*Id.*, ¶¶ 28-29.)  Count VI elaborates that defendants engaged in this conduct with the purpose of intentionally inflicting emotional distress on plaintiff.  (*Id.*, ¶ 36.)

## II.    Motion to Dismiss Standard.

On a motion to dismiss, the Court must view the Complaint in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421-22, 23 L. Ed. 2d 404, 89 S. Ct. 1843 (1969).  A

motion to dismiss may be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); *Bradberry v. Pinellas County*, 789 F.2d 1513, 1515 (11th Cir. 1986). The rules of pleading require only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a), Fed.R.Civ.P. Moreover, the Court must, "at this stage of the litigation, . . . accept [plaintiff's] allegations as true." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984); *Stephens v. HHS*, 901 F.2d 1571, 1573 (11th Cir. 1990); *cf. South Florida Water Management Dist. v. Montalvo*, 84 F.3d 402, 409 n.10 (11th Cir. 1996) (noting that conclusory allegations and unwarranted deductions of fact are not deemed true on a motion to dismiss). The Court's inquiry at this stage focuses on whether the challenged pleadings "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47. A plaintiff must meet only an "exceedingly low" threshold to survive a Rule 12(b)(6) motion. *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881 (11th Cir. 2003).

## III.   Analysis.

As an initial matter, the parties agree that Counts IV and VI are synonymous; therefore, they may properly be collapsed into a single cause of action for the tort of outrage. (Defendants' Brief, at 5; Opposition Brief, at 1.) This stipulation is consistent with Alabama law. *See, e.g., Wal-Mart Stores, Inc. v. Smitherman*, 872 So.2d 833, 836 (Ala. 2003) (indicating in passing that claim for intentional infliction of emotional distress is really a claim for tort of outrage); *Harrelson v. R.J.*, 882 So.2d 317, 321 (Ala. 2003) (describing plaintiff's claim as one for "intentional infliction of emotional distress, *i.e.*, the tort of outrage"). As there is no dispute between the parties that Count VI is synonymous with, and entirely redundant of, Count IV, the Motion to Dismiss is hereby **granted** as to Count VI, and that claim is dismissed as duplicative.

Turning now to the substance of the Motion, Alabama courts have outlined the contours of the tort of outrage in the following terms:

"[W]e now recognize that one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such

emotional distress and for bodily harm resulting from the distress. The emotional
distress thereunder must be so severe that no reasonable person could be expected to
endure it. Any recovery must be reasonable and justified under the circumstances,
liability ensuing only when the conduct is extreme.... By extreme we refer to conduct so
outrageous in character and so extreme in degree as to go beyond all possible bounds
of decency, and to be regarded as atrocious and utterly intolerable in a civilized
society."

*Baker v. State Farm General Ins. Co.*, 585 So.2d 804, 807 (Ala. 1991) (citation omitted).

While Alabama courts do recognize this tort, they have consistently deemed it a "very limited
cause of action that is available only in the most egregious circumstances." *Thomas v. BSE Indus.
Contractors, Inc.*, 624 So.2d 1041, 1044 (Ala. 1993) (noting that the Alabama Supreme Court "has
held in a large majority of the outrage cases reviewed that no jury question was presented").[1] Under
current Alabama law, the parties agree, a plaintiff cannot prevail on an outrage claim unless she
establishes that the defendant's conduct: "(1) was intentional or reckless; (2) was extreme and
outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected
to endure it." *Harrelson*, 882 So.2d at 322 (quoting *Thomas*, 624 So.2d at 1043).

Defendants argue that none of the common-law prerequisites for outrage are satisfied here.
(Defendants' Brief, at 6.) As to the first element, defendants maintain that the alleged conduct was
neither intentional nor reckless. (*Id.*) At the Rule 12(b)(6) stage, however, the Court accepts the well-
pleaded allegations of the Complaint as true. Lees' pleading characterizes defendants' conduct as
consisting of "intentional acts" that were carried out "intentionally." (Complaint, ¶¶ 22, 25, 36.)
Defendants may (and apparently do) dispute the veracity of plaintiff's contention in this regard.
Nonetheless, they are not entitled to Rule 12(b)(6) relief on the ground that the subject conduct was not

---

[1]       So circumscribed, in fact, is the reach of the tort of outrage that the Alabama Supreme
Court has allowed such claims only in three limited circumstances: "cases having to do with wrongful
conduct in the context of family burials; cases where insurance agents employed heavy-handed,
barbaric means to coerce a settlement; and cases involving egregious sexual harassment." *Carter v.
Harris*, 64 F. Supp.2d 1182, 1194 (M.D. Ala. 1999) (citing *Thomas*, 624 So.2d at 1044); *see also
Potts v. Hayes*, 771 So.2d 462, 465 (Ala. 2000). Notwithstanding this narrowly cabined application
of outrage doctrine, Alabama courts have never held that, as a matter of law, outrage cannot and does
not apply to any circumstances other than those previously recognized by the Alabama Supreme Court.

intentional or reckless, when plaintiff has clearly pleaded otherwise, and it is a fact question as to whether defendants acted intentionally or not.  Likewise, the Court readily concludes that the third element of an outrage claim has been adequately pleaded, as Lees has sufficiently alleged that she suffered severe emotional distress because of defendants' acts.  (Complaint, ¶¶ 30, 37.)

Plainly, then, defendants' Motion to Dismiss stands or falls on the second prong of the outrage claim, to-wit: whether the conduct alleged in the Complaint comports with the legal definition of "extreme and outrageous" under Alabama law.[2]  Ever since the inception of outrage doctrine, Alabama courts have recognized the viability of such claims in the employment context in appropriate circumstances.  Indeed, the law is clear that "an employer, by virtue of his position, possesses no roving license to treat his employee in an extreme and outrageous manner, whether before, during, or after their relationship."  *American Road Service Co. v. Inmon*, 394 So.2d 361, 364 (Ala. 1981).  That said, Alabama courts have taken pains to emphasize that an outrage claim will not lie in a mere run-of-the-mill employment dispute arising from dismissal of an employee at will.  *See Smitherman*, 872 So.2d at 840 ("It would be intolerable in a civilized society to hold that an employer is guilty of outrageous conduct for merely discharging an employee at will.") (quoting *Harrell v. Reynolds Metals Co.*, 495 So.2d 1381, 1387 (Ala. 1986)).

Review of pertinent Alabama authorities reveals that the line of demarcation between non-actionable outrage claims and actionable outrage claims in the employment arena is found in the determination of whether the termination is for reasons that contravene public policy.  Where a plaintiff complains that her discharge contravenes public policy, particularly if the discharge was the culmination of a protracted pattern of discrimination in violation of public policy, she may properly pursue a claim of outrage because the violation of public policy furnishes the requisite "sound of fury" to accompany the termination.  *Smitherman*, 872 So.2d at 840 (outrage claim not cognizable if termination is "not for a

---

[2]      Despite the fact that the "extreme and outrageous" issue is the obvious battleground of defendants' Motion, plaintiff's brief bafflingly fails to address that argument directly, instead focusing on whether the allegations of the Complaint might give rise to a finding of recklessness for purposes of the first element (even though Lees unquestionably pleaded intent with sufficient specificity to survive Rule 12(b)(6) scrutiny on that front).

reason which contravenes public policy," and if termination was not accompanied with "sound of fury") (quoting *Harrell*, 495 So.2d at 1387); *see also Wyatt v. BellSouth, Inc.*, 998 F. Supp. 1303, 1312 (M.D. Ala. 1998) (under Alabama law, "the discharge of an employee rises to the level of the tort of outrage only if the discharge violates public policy").[3]   Alabama courts have construed this standard to authorize outrage claims where a plaintiff is complaining about discrimination in retaliation for exercising the fundamental right to marry, or about intrusion on her federally protected right to be free from gender discrimination.  *See Rice v. United Ins. Co. of America*, 465 So.2d 1100, 1102 (Ala. 1984) (trial court erred in dismissing outrage claim where pregnant employee claimed employer discriminated because of her pregnancy by engaging in a pattern of conduct over a period of several months aimed at forcing her to leave her job, thereby violating plaintiff's federally protected right to be free from discrimination based on sex); *Cunningham v. Dabbs*, 703 So.2d 979, 983 (Ala. Civ. App. 1997) (finding jury question on outrage claim where plaintiff did not claim wrongful discharge of at-will employee, but instead alleged a pattern of harassment and a termination of employment in violation of her fundamental right to marry).

The Court harbors no doubt that a ten-month onslaught of harassment, a slew of adverse repercussions, and a firing, all because the plaintiff had enlisted in the U.S. Air Force Reserves, would offend public policy, as expressed in USERRA.  If Lees is able to prove a set of facts establishing that this sequence of events is, in fact, what occurred, and that defendants' acts were motivated by

---

[3]        This line of authority may be contrasted with, and limited by, another strand of caselaw suggesting that being subjected to unlawful discrimination over an abbreviated time period, or facing unlawful conduct falling short of discharge, may be inadequate to sustain a claim for outrage under Alabama law, even if the employer's acts otherwise are irreconcilable with sound public policy.  *See Thrasher v. Ivan Leonard Chevrolet, Inc.*, 195 F. Supp.2d 1314, 1319 (N.D. Ala. 2002) (finding that allegations of pregnancy discrimination with regard to overtime hours, scrutiny and termination over a period of eight days are "not sufficiently egregious, as a matter of law, to support a cause of action for outrage under Alabama law"); *Bell v. Eufaula City Bd. of Educ.*, 995 F. Supp. 1377, 1387 (M.D. Ala. 1998) (forced transfer of teacher to new teaching team, even if done for reasons motivated by race, gender or age, does not constitute "egregious" conduct under Alabama law for purposes of outrage claim); *Stabler v. City of Mobile*, 844 So.2d 555, 562 (Ala. 2002) (holding that employer's act of writing a letter for the purpose of attacking and criticizing employee was not so outrageous in character or extreme in degree as to exceed all possible bounds of decency).

discriminatory animus against her military status, then she could conceivably prevail on her outrage cause of action.  At this nascent stage of the proceedings, the Court cannot rule out the possibility that Lees may be able to prove such a set of facts.  Accordingly, she will be permitted to proceed on her outrage claim, and defendants' request to dismiss that claim for failure to state claim upon which relief can be granted is **denied**.

## IV.    Conclusion.

For all of the foregoing reasons, defendants' Motion to Dismiss Plaintiff's Claims of Outrage and Intentional Infliction of Emotional Distress (doc. 38) is **granted in part**, and **denied in part**.  The Motion is **granted** as to plaintiff's intentional infliction of emotional distress cause of action (Count VI), and that claim is hereby **dismissed** as redundant of Count IV.  The Motion is **denied** as to plaintiff's outrage cause of action (Count IV).


DONE and ORDERED this 6th day of May, 2005.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE